UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ANTONIO JONES,

                        Plaintiff,

v.                                                                                       CASE # 18-cv-01299

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
_____

APPEARANCES:                                            OF COUNSEL:

LAW OFFICES OF KENNETH HILLER, PLLC        BRANDI CHRISTINE
  Counsel for Plaintiff                                         SMITH, ESQ.
600 North Bailey Ave                                    KENNETH R. HILLER, ESQ.
Suite 1A
Amherst, NY 14226

U.S. SOCIAL SECURITY ADMIN.                    ANDREEA LAURA
OFFICE OF REG'L GEN. COUNSEL – REGION II    LECHLEITNER, ESQ.
  Counsel for Defendant                                  DANIELLA M. CALENZO, ESQ.
26 Federal Plaza – Room 3904
New York, NY 10278

J. Gregory Wehrman, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

      The parties consented in accordance with a standing order to proceed before the undersigned. The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Upon review of the administrative record and consideration of the parties' filings, the Plaintiff's motion for judgment on the administrative record is **DENIED**, the Defendant's motion for judgment on the administrative record is **GRANTED**, and the decision of the Commissioner is **AFFIRMED**.

**I.     RELEVANT BACKGROUND**

**A.     Factual Background**

Plaintiff was born on December 6, 1970, and graduated high school. (Tr. 227, 235). Generally, Plaintiff's alleged disability consists of right knee injury, status post-surgery and torn rotator cuff in the right shoulder. (Tr. 226). His alleged closed period of disability is from August 19, 2013 to April 21, 2015. (Tr. 218). His date last insured is December 31, 2018. (Tr. 235). He previously worked as a construction worker. (Tr. 20).

**B.     Procedural History**

On February 4, 2015, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II, and Supplemental Security Income ("SSI") under Title XVI, of the Social Security Act. (Tr. 188-196). Plaintiff's application was initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ"). On July 25, 2017, Plaintiff appeared before the ALJ, David Begley. (Tr. 15). On September 20, 2017, ALJ Begley issued a written decision finding Plaintiff not disabled under the Social Security Act. (Tr. 15-22). On October 1, 2018, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (Tr. 1-4). Thereafter, Plaintiff timely sought judicial review in this Court.

**C.     The ALJ's Decision**

Generally, in his decision, the ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2021.

2. The claimant has not engaged in substantial gainful activity since August 19, 2013, the alleged onset date, through April 21, 2015, the end of the alleged period of disability (20 CFR 404.1571 et seq., and 416.971 et seq.).

3. The claimant has the following severe impairments: right knee meniscus tear status post surgery and right shoulder rotator cuff tear (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant cannot climb ladders, ropes, or scaffolds; can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; can frequently reach with the dominant right upper extremity; can occasionally overhead reach with the right upper extremity; must avoid concentrated exposure to extreme cold, humidity, and wetness; and must avoid slippery and uneven surfaces, hazardous machinery, unprotected heights, and open flames.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on December 6, 1970 and was 42 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from August 19, 2013, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

**II.     THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION**

    **A.     Plaintiff's Arguments**

Plaintiff makes essentially two separate arguments in support of his motion for judgment on the pleadings. First, Plaintiff argues the ALJ improperly rejected the disability opinions of his treating providers. (Dkt. No. 10 at 1 [Pl.'s Mem. of Law]). Second, the ALJ failed to rely on a medical opinion or useful assessment of Plaintiff's physical impairments, and instead relied solely upon his lay interpretation of bare medical findings. (Dkt. No. 10 at 1).

### B. Defendant's Arguments

In response, Defendant makes one argument. Defendant argues that the ALJ's RFC finding was supported by substantial evidence. (Dkt. No. 14 at 11 [Def.'s Mem. of Law]).

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where

evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV.   ANALYSIS

### A. **Opinion Evidence**

Plaintiff asserts the ALJ ignored two opinions and improperly weighed a third opinion. (Dkt. No. 10 at 11). Plaintiff also argues the ALJ erred because he did not rely on any medical opinion or explain what evidence he relied upon to determine Plaintiff's residual functional capacity, but rather relied on his lay interpretation of the medical findings. (Dkt. No. 10 at 10).

An ALJ's RFC determination may be supported by substantial evidence even where the ALJ rejected a specific medical opinion.  The Second Circuit has held that where, "the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity," *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x. 29, 34 (2d Cir. 2013), a medical source statement or formal medical opinion is not necessarily required, *see id.*; *cf Pellam v. Astrue*, 508 F. App'x. 87, 90 (2d Cir. 2013) (upholding ALJ's RFC determination where he "rejected" physician's opinion but relied on physician's findings and treatment notes). *Monroe v. Comm'r of Soc. Sec.,* 676 F. App'x 5, 8 (2d Cir. 2017).

The ALJ properly gave little weight to the opinions of Dr. Tetro, who first saw Plaintiff on September 12, 2014, for right shoulder pain. (Tr. 353). He noted improvement with therapy and a cortisone injection. (Tr. 353). Upon examination, Plaintiff had full (5/5) or nearly full (5-/5) motor strength and had mildly positive testing for rotator cuff impingement. (Tr. 354). Dr. Tetro opined the Plaintiff was "disabled with regards to his usual occupation" due to the injuries he sustained from the August 2013 accident. (Tr. 355). At a follow-up visit in October 2014, Dr. Tetro again stated Plaintiff was unable to work and would be considered disabled with regard to his "usual" occupation. (Tr. 350). While Plaintiff claims that the ALJ should have given the opinion more

weight, the opinion is actually consistent with the ALJ's own finding, at step four, that Plaintiff could not do his past work as a construction laborer during the closed period. (Tr. 20, 350, 353). Dr. Tetro did not specify any other functional limitations and the ALJ properly stated opinions of Dr. Tetro were on an issue reserved to the Commissioner. (Tr. 20). As stated in the regulations, a physician's statement that an individual is or is not disabled or that he can or cannot work is a statement on an issue reserved to the Commissioner and is not entitled to any special significance. 20 C.F.R. §§404.1527(d), 416.927(d).

Similarly, the statements by Dr. Huckell and Dr. Pusatier, also do not support any greater limitations than found by the ALJ and were also on an issue reserved to the Commissioner. On October 16, 2013, a week before Plaintiff's knee surgery, Dr. Huckell stated Plaintiff was temporarily disabled with respect to the right knee. (Tr. 333). However, after surgery, by December 2015, Dr. Huckell found Plaintiff had a normal gait, coordination, sensation and motor strength. (Tr. 346). Instead of reiterating disability, Dr. Huckell advised Plaintiff to gradually return to normal activities and do low-impact exercise. (Tr. 347).

Plaintiff asserts Dr. Pusatier's work excuse "notes" should have been discussed and weighed. (Dkt. No. 10 at 11). Dr. Pusatier indicated in his treatment notes that he provided plaintiff with work "notes" in August and September 2013, but he did not state what limitations those notes included, if any, or whether they merely stated that Plaintiff should be medically excused from work. (Tr. 281, 283). Dr. Pusatier also did not state how long Plaintiff's work "excusal" would last. (Tr. 281, 283). Both notes were prior to knee surgery and when Plaintiff returned in January 2015, there was no mention of additional work notes. (Tr. 284-88). As expressly stated in Plaintiff's brief, a medical opinion is a statement from an acceptable medical source that "reflect[s] judgments about the nature and severity of [the claimant's] impairment(s), including . . .

7

symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). Notably, Dr. Pusatier was asked by the agency to provide a medical source statement setting forth Plaintiff's limitations, but declined to complete it. (Tr. 292-93).

Both Dr. Huckell and Dr. Pusatier's statements are not medical opinions because they relate to a matter reserved to the Commissioner. 20 C.F.R. § 404.1527(d). Neither statement provides support for plaintiff's allegation of disability and the fact that the ALJ did not discuss them does not require remand. *Petrie v. Astrue*, 412 F. App'x 401, 407 (2d Cir. 2011) ("[W]here the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." (citing *Monguer v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); *Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982))). Despite Plaintiff's assertion that these "opinions" should be considered, Plaintiff has not shown that he had additional limitations beyond those included in the RFC finding, as it is his burden to show. *Smith v. Berryhill*, 740 F. Appx. 721, 726 (2d Cir. 2018) (explaining that plaintiff had a duty to prove a more restrictive RFC than the ALJ found). None of the opinions upon which he relies actually show that he had work-related limitations that precluded light work.

**B. Duty to Develop the Record**

"The social security ALJ, unlike a judge in a trial, must on behalf of all claimants … affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508, 509 (2d Cir. 2009) (citations and alterations omitted). "[W]here there are deficiencies in the record, an ALJ is under an affirmative

obligation to develop a claimant's medical history even when the claimant is represented by counsel or by a paralegal." *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir.1999); *see Eusepi v. Colvin*, 595 F. App'x 7, 9 (2d Cir. 2014) ("The ALJ's general duty to develop the administrative record applies even where the plaintiff is represented by counsel, but the agency is required affirmatively to seek out additional evidence only where there are 'obvious gaps' in the administrative record.").

However, "[t]he ALJ is not required to develop the record any further when the evidence already presented is adequate for [the ALJ] to make a determination as to disability." *Janes v. Berryhill*, 710 F. App'x 33, 34 (2d Cir. 2018) (citing *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996)) (internal citations omitted); *see Abbott v. Colvin*, 596 F. App'x 21 (2d Cir. 2015) (ALJ did not err in failing to seek additional information from a treating source because there were no obvious gaps in the record); *see Lowry v. Astrue*, 474 F. App'x 801, 804 (2d Cir. 2012) (ALJ was not required to re-contact treating source for a medical source statement because record contained complete medical history); *see also Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5 (2d Cir. 2017) (a medical source statement or formal medical opinion was not necessarily required where the record contains sufficient evidence from which an ALJ can assess the RFC).

In a two-pronged argument, contending that the ALJ failed to develop the record, Plaintiff asserts the ALJ should have recontacted Dr. Tetro before rejecting his opinions, and the ALJ committed legal error in failing to obtain a separate medical opinion. (Dkt. No. 10 at 18-20). The relevant Regulations stipulate that a consultative examination is ordered at the Administration's request, on an individual case basis, and when appropriate. *See* 20 C.F.R. §§ 404.1519, 416.919; *see also* 20 C.F.R. §§ 404.1517, 416.916. If the evidence in the record is sufficient to render a decision on the plaintiff's disability, an ALJ is not required to order a consultative examination.

*See* 20 C.F.R. §§ 404.1517, 416.917; *see Kameisha v. Colvin*, 100 F. Supp. 3d 200, 208 (N.D.N.Y. 2015).

As persuasively argued by the Defendant, the record contained sufficient information for the ALJ to make his disability determination. Here, the ALJ reviewed treatment notes from Plaintiff's primary care physicians, orthopedists, and physical therapists, as well as Plaintiff's statements at the hearing and in agency forms about his impairments. Plaintiff's counsel did not request that the ALJ obtain additional records or suggest records were missing during or after the hearing.

Further, the Second Circuit has also long understood that a medical opinion is not required to support an RFC finding. *Berry v. Schweiker*, 675 F.2d 464, 468 (2d Cir. 1982) (holding that the ALJ's RFC finding, which restricted Berry to non-stressful work, was supported by the clinical findings of an examining psychiatrist and Berry's hearing testimony); *Corbiere v. Berryhill,* 760 F. App'x 54, 56 (2d Cir Jan. 23, 2019) (affirming the Commissioner's final decision despite the lack of a medical opinion expressly speaking to the physical portion of the RFC determination of sedentary work, relying instead on the relevant medical findings in the treatment notes); *Monroe v. Comm'r of Soc. Sec*, 676 F. App'x. 5, 9 (2d Cir. 2017) (finding that the ALJ could rely on treatment notes and activities of daily living to formulate the RFC assessment, and rejecting the argument that a medical opinion was required); *Johnson v. Colvin*, 669 F. App'x 44, 46 (2d Cir. 2016) (explaining that an ALJ looks to "all of the relevant medical and other evidence" including relevant medical reports, medical history, and statements from the claimant when assessing an applicant's RFC). The ALJ properly relied on Plaintiff's treatment notes and testimony to support the RFC. (Tr. 19).

In regard to the shoulder, treatment notes showed Plaintiff had very limited and conservative treatment, with cortisone injections and physical therapy, for his right-shoulder pain, and consistently described his pain as "slight" or "minimal." (Tr. 451, 457, 471, 475, 479, 488). Plaintiff repeatedly stated that his shoulder pain did not cause functional limitations. (Tr. 471, 473, 479). When discharged from physical therapy in November 2014, he reported the absence of pain, except some achiness with overhead reaching. (Tr. 605). He had full or nearly full motor strength and intact sensation. (Tr. 350, 354, 480, 485). Dr. Pusatier found that plaintiff had normal extremities and no focal neurological findings. (Tr. 286).

Although Plaintiff had surgery on his knee in October 2013, followed by therapy until March 2014, the Court's review of the medical evidence confirms the RFC findings by the ALJ. As noted by the ALJ in his decision, Plaintiff's knee improved with treatment. (Tr. 19). Physical therapy records confirm that plaintiff improved in his ability to walk (Tr. 504, 507, 516, 538, 547, 553, 557), to climb up and down stairs (Tr. 504, 510, 516, 530, 538, 547, 553, 557), and with bending. (Tr. 498). By January 2014, he usually denied any knee pain (Tr. 557, 561, 571, 575, 593), and admitted to feeling stronger (Tr. 585), although he sometimes complained of knee soreness after doing something robust, like using the Stairmaster machine. (Tr. 567). By January 27, 2014, he had returned to the gym, where he sometimes rode a bike or otherwise "work[ed] out". (Tr. 571, 579). As the ALJ explained, plaintiff's prognosis, on discharge from physical therapy, was "good". (Tr. 19 see Tr. 449-598). Treatment records from two providers that show recommendations for Plaintiff to exercise, also provides support for the ALJ's RFC finding of light work. Dr. Huckell recommended Plaintiff do low-impact exercises in December 2015. (Tr. 347). Dr. Pusatier also told Plaintiff to continue to exercise and remind him of the importance of physical exercise in January 2015. (Tr. 84, 287). Both doctors believed that plaintiff ought not be sedentary,

supporting the RFC for light work. *See Rivers v. Astrue*, 280 F. App'x 20, 22 (2d Cir. 2008) (holding that the ALJ properly considered treating physician's indication that the claimant should continue an active exercise regimen in support of a finding of light work); *Serra v. Sullivan*, 762 F.Supp. 1030, 1034 (W.D.N.Y. 1991) (finding that RFC for medium work, which is even more exertionally demanding than light work, was supported by treatment notes showing improvement after surgery and by a treating doctor's statement that plaintiff could resume a "normal lifestyle with an exercise program").

Lastly, the ALJ also properly considered the claimant's activities of daily living and statements at the hearing to support the RFC. As the ALJ noted, plaintiff had an "active lifestyle" (Tr. 20). Plaintiff went to the gym and worked out, including with a bike (Tr. 571, 579). He stated during the relevant period that he coached basketball (Tr. 331, 451). He traveled to New York City, where he walked for several hours in snow (Tr. 523). Plaintiff testified that he went back to work due to financial constraints, since "[n]o fault expired," and he "emptied out [the] welfare account" (Tr. 43). Plaintiff also explained, through his attorney, that he would have lost his union benefits if he had done any type of work while he was out of work due to his injuries (Tr. 31-32). Thus, whether or not he stayed home for the 20 months appeared to be a reflection of his financial situation rather than his ability to do any work in the economy.

In sum, the ALJ does not need to base his RFC finding on a medical opinion but could rely on other evidence, as the ALJ did in this case. An ALJ must develop the record further only if the evidence he already has is insufficient, and it is the ALJ who makes that insufficiency determination. *See* 20 C.F.R. §§ 404.1520b(b)(1), 416.920b(b)(1) ("If any of the evidence in your case record, including any medical opinions, is inconsistent, we will consider the relevant evidence and see if we can determine whether you are disabled based on the evidence we have"); *Rachelle*

*G. v. Comm'r of Soc. Sec.*, No. 8:17–cv-1102 (CFH), 2019 WL 162018, at *9 (N.D.N.Y. 2019) (finding that the ALJ did not err in failing to recontact plaintiff's treating sources for statements or further information, and agreeing with the Commissioner that the record was adequate for the ALJ to reach a reasoned conclusion without a need to obtain a medical statement from the claimant's providers). The ALJ satisfied his duty to develop the record and there were no significant gaps in the record that prevented the RFC from being based on substantial evidence.

**ACCORDINGLY, it is**

    **ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 10) is **<u>DENIED</u>**; and it is further

    **ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 14) is **<u>GRANTED</u>**.

Dated: December 16, 2019  
Rochester, New York

*J. Gregory Wehrman*  
HON. J. Gregory Wehrman  
United States Magistrate Judge